DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Wanda Patterson, et al., | ) | |
| | ) | CASE NO. 5:03CV1596 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | (Resolving Doc. Nos. 128, 131, 138) |
| Heartland Industrial Partners, LLP, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## <u>INTRODUCTION</u>

Unlikely advocates advance the positions in this case. The six plaintiffs are employees at a company where there is no union representation. They challenge cooperative agreements between their employer and a union, arguing that the union is giving away too many of their rights and possible benefits in order to secure information and access for an organizing campaign. At the same time, the plaintiffs make clear they have no interest in any union representing them. Plaintiffs are represented in their efforts in part by the National Right to Work Legal Defense Foundation, an organization that champions the right of individual workers to be free from union representation.

The defendant employer is owned by an investment partnership firm led by David Stockman, a member of the Reagan administration who served in the capacity of Budget Director.   Mr. Stockman, one of the founding partners of Heartland Industrial Partners, LLP ('Heartland"), claims that cooperative agreements, also called neutrality agreements, are essential to permit fair access to unions in their organizing efforts and to avoid the combative

(5:03CV1596)

environment that often accompanies those efforts.

Stockman claims that he receives the union's assurance of no strikes and other guarantees related to wages in return for providing the defendant union with worker addresses and by making plant facilities available to the union for designated periods of time.

Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC  ("USW" or "the union") defends its actions in the neutrality agreements as necessary to achieve success in the organizing campaign. The union is placed in the odd position of defending these cooperative agreements from employee complaints of undue compromise to the demands of an employer.

The relatively rare claim is made that the union is being too "cozy" with an industrial employer in the Midwest. These Plaintiff employees claim that contrary to 29 U.S.C. Section 186(a) and (b), the employer has agreed to "pay, lend or deliver, any money or other thing of value" to the union in order to obtain the neutrality agreement and therefore, it must be invalidated by the Court.  The parties have filed cross motions for summary judgment on the issue. Finding that there are no material facts in dispute, and for the following reasons, the Court grants the motions of the employer and the union and denies the plaintiffs' motion for summary judgment. The Court's analysis follows.

**FACTUAL BACKGROUND**

Defendant Heartland is a company formed by Stockman with the stated intent of acquiring underutilized manufacturing plants in the Midwest that the company believes could again be made profitable.  According to Stockman, harmonious labor relations is a chief goal of

2

(5:03CV1596)

the company. (Doc. No.130, Stockman Depo. at 22-23). In his view, "[t]reating organized labor

as an economic partner rather an adversary can provide significant value in industrial company

private equity investments." Id. Stockman found a willing union partner in the USW.  Ron

Bloom, Special Assistant to the USW's President, was the union's primary negotiator with

respect to the Heartland agreement. At early meetings, Bloom and Stockman discussed how

Heartland might enter into a constructive relationship with labor.   Bloom suggested a neutrality

agreement after listening to Stockman's desire for an alliance with labor:

> I told him I thought what he was doing was extremely important for the country
> and for workers who work in manufacturing. And in that context, after I - - after
> some more conversation where I better understood what he yet had in mind, I
> approached him with the idea, as I put it at the time I believe, kind of codifying
> the vision that I thought we shared into an agreement. That is the genesis of what
> eventually became the framework agreement and the side letter.

Doc. No. 130, Exhibit 9, Bloom Deposition, p. 84.

In 2000, Defendants Heartland and USW agreed to the "Framework for a Constructive

Collective Bargaining Relationship and a separate side letter agreement (hereinafter "the

agreements")(See Doc. No. 129, Plaintiffs' Motion for Summary Judgment, Exhibit 15) . In

general, the agreements provided the union with company cooperation for membership

organizing drives in exchange for negotiated terms of what union representation would look like

at the company in the event the drive was successful. For the organizing campaign, the company

agreed to provide full names and addresses; access to the workplace to permit the union conduct

its campaign; and the company would refrain from speaking unfavorably about the union.

In return, the employer received the union's agreement to limit its organizing campaign

to  a ninety day period; to agree not to speak unfavorably about the employer during the

(5:03CV1596)

campaign; and in the event that the organizing was unsuccessful, the union agreed to only

conduct one organizing campaign per year and no more than 3 organizing campaigns in a five

year period.

Rather than an election to accept or reject the union's representation, a "card check

process" was to be used to determine the success of an organizing drive. As Defendant USW

describes the procedure:

> A card check process involves a union collecting signed authorization cards from
> employees during an organizing campaign and submitting those cards to the
> employer or a third-party neutral to determine whether the union has the support
> of a majority of employees in the relevant bargaining unit. If the union has
> received authorization cards from a majority of the bargaining unit, the employer,
> per the recognition agreement, recognizes the union as the employees' bargaining
> representative, thereby avoiding the time, expense, delay and acrimony associated
> with a NLRB-supervised election.

Doc. No. 131, Defendant USW's Motion for Summary Judgment, at 3. See Framework

Agreement, Exhibit 15, at (I)(A)(5).

The agreements also contained key direction for the terms of a first collective bargaining

agreement if employees chose the union as their bargaining representative. In the event of a

dispute, most of the terms of the agreement were to be submitted to arbitration, and the

procedure for arbitrating disputes was also described in the agreements.

Finally, if there were other companies in which Heartland gained a controlling interest,

Heartland would also cause those newly acquired companies to also enter into a Framework and

Side Agreement with the union to govern the terms of organizing drives at those newly acquired

facilities.

In early 2001, Heartland gained a controlling interest in Collins & Aikman Corporation

4

(5:03CV1596)

and several manufacturing plants operated by Collins & Aikman Products Co. (hereinafter

"C&A").  Heartland caused C&A to enter into its own neutrality agreements with defendant

USW for the six manufacturing plants C&A operates in the Midwest, which produce

manufactured goods that serve the automotive industry (Stockman Depo. at 36-37). One of the

plants owned by C&A is located in Holmesville, Ohio, where the Plaintiffs make interior

automotive components. It is undisputed that while there are minor differences between the

Heartland/USW Framework and Side Letter agreements and the subsequent agreements between

the USW and C&A, there are not material or substantive differences between the agreements.

See Doc. No. 129, Plaintiffs' Motion for Summary Judgment, Exhibit 16.

In August, 2003, according to the agreements, Defendant USW began organizing efforts

at the C&A Holmesville, Ohio plant. The union and C&A negotiated an agreement for union

organizers to have access to the plant during non-work hours, as required by the agreements. The

union then began its campaign to persuade a majority of those within the Holmesville bargaining

unit to sign union authorization cards.  If a majority of workers signed such cards, then the drive

was to be considered a success. No votes on membership as such were to be held.

These organizing efforts were met with Plaintiffs' and other employees' active

resistance. An Anti-Union Committee was formed and a campaign to persuade employees not to

join the union went forward without company support or interference. See Docket No. 138,

Heartland's Motion for Summary Judgment, at 9, and, e.g. Docket No. 133, Exhibit A, Plaintiff

Wanda Patterson's Deposition at 59-63. Two weeks before the end of the ninety day organizing

period,  and while the organizing drive was still proceeding, Plaintiffs filed this lawsuit. The

(5:03CV1596)

organizing effort failed after it failed to garner a majority of employees in the plant.[1] To date, no

further organizing efforts by the USW have been made at the Holmesville plant.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When

considering a motion for summary judgment, "the inferences to be drawn from the underlying

facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions]

must be viewed in the light most favorable to the party opposing the motion."  U.S. v. Diebold,

Inc., 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is

the need for a trial – whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party."  Anderson v. Liberty Lobby, 477 U.S. at 250.  Put another way, this Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003).

---

[1]     The Court notes that organizing efforts by the USW at two of the six other C&A
plants were successful.

6

(5:03CV1596)

### DISCUSSION

This case has appeared to the Court, throughout the proceedings,[2] to present a new and unique method for developing a potential collective bargaining agreement. Here, the investor, Heartland, by agreeing to control its subsidiary companies, C&A, the actual employer, has apparently selected and contracted with a union of Heartland's choice, with which Heartland wishes its subsidiary to be engaged with, in the event the subsidiary's employees decide, in the future, that they wish to be represented in a collective bargaining situation as opposed to remaining as non-union employees.

Plaintiff employees claim they have standing to challenge these agreements, that their vehicle for the challenge is a private right of action pursuant to the 29 U.S.C. Section 186,[3] and that they have demonstrated factually just such a violation of the statute because the employer gives to the union "other things of value" in exchange for cooperative or neutrality agreements. The union and employer defendants insist that there is no standing, there is no private right of action and that even if both existed, there was no violation of 29 U.S.C. Section 186.

A. Standing:Constitutional Standing

Plaintiffs argue that they have both constitutional and prudential standing to bring these claims. As to constitutional standing, the parties agree that Plaintiffs' claim must demonstrate

---

[2]     Those proceedings include several hard fought discovery disputes, a mandamus petition to the Sixth Circuit, and a stay during  the bankruptcy of one of the parties.

[3]      Within this Memorandum Opinion, the Court will also refer to 29 U.S.C. Section 186 as it is  better known as Section 302 of the Labor Management Relations Act ("LMRA").

(5:03CV1596)

three things:

> (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a casual relationship between the injury and the challenged conduct. . . and (3) a likelihood that the injury will be redressed by a favorable decision.

Associated Gen. Contractors of America v. Columbus, 172 F.3d 411, 421 (6th Cir. 2003) *quoting*

Associated General Contractors v. Jacksonville, 508 U.S. 656,663 (1993).

Plaintiffs argue that constitutional standing is met because (1) there is an injury in fact arising from the harm of being represented by a union that gained representation through an allegedly corrupt agreement and the potential deprivation of common law associational rights based on the process by which the union would gain the right to represent Plaintiffs as employees  plus injuries alleged to likely result from the terms of that representation;  (2) there is a casual relationship between the injury and the challenged conduct because as employees, the terms and conditions of employment will be determined pursuant to the agreements, which Plaintiffs allege are illegal; and (3) there is a substantial likelihood that if the Court invalidates the agreements the remedy Plaintiffs seek, not to be organized pursuant to the agreements, will occur.

Defendants both argue there is no standing, taking the view that  Plaintiffs have no injuries because the organizing drive failed and it is not likely to repeated. Defendants correctly point out that any harms from a collective bargaining agreement may never come to pass and that potential harms are not sufficient to confer standing. In essence, it seems, Defendants argue that Plaintiffs claims are premature and speculative.

8

(5:03CV1596)

Defendants made an early attempt to have this matter dismissed on the basis of standing. See Docket Nos. 7 &11. The Court denied the motions without prejudice and directed the parties to complete discovery based on the likely appeal of the Court's decision given the nature of the dispute. The union sought a writ of mandamus from the Sixth Circuit directing this Court to rule on the motion on standing and other jurisdictional grounds rather than complete discovery. The writ was denied. See Docket No. 57.

Discovery proceeded and in the motions for summary judgment, Defendants more pointedly argue that Plaintiffs have produced no evidence of harm to entitle them to bring a lawsuit under 29 U.S.C. Section 186. The Court agrees that the need for evidence to support Plaintiffs' standing to bring this claim is greater after the conclusion of discovery because at this late stage of the litigation, Plaintiff must muster all the facts at its disposal to resist the motion. Lujan v. Defenders of Wildlife, 504 U.S. 555(1992); Sault St. Marie Tribe of Chippewa Indians v. U.S., 288 F.3d 910, 915 (6th Cir. 2002).

Defendants point to the absence of such evidence and several of the Plaintiffs' own statements that they were not harmed by the union or prevented by the defendant company from conducting an effective resistance to the organizing campaign.

As to harm, the Second Amended Complaint alleges that Defendants violated their 'right to organize and select representatives of their own choosing, or to select no representative at all." Docket No. 55, Second Amended Complaint, at Para. 41.  Plaintiffs also allege that if the agreements are given effect, they will be represented pursuant to a "corrupt arrangement" by the employer, Para. 39, and the union, Para. 40.  Plaintiffs also allege they will be "otherwise

9

(5:03CV1596)

subjected to injury and irreparable infringements of their rights." Second Amended Complaint, Para. 42(e).

The Court agrees with Defendants that it is not clear, meaning there are no facts showing, that Plaintiffs' working conditions would be harmed if a collective bargain agreement came into place as a result of the agreements.  The Court also recognizes that "standing is not 'an ingenious academic exercise in the conceivable'. . . but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm." Lujan, 504 U.S. at 566. There is little demonstrated by Plaintiffs in what the Court considers harm.

However, the Court finds that there is standing because of the allegation of other injuries arising from what Plaintiffs claim is an illegal agreement. At the time the lawsuit was filed, Plaintiffs were resisting the organizing campaign launched pursuant to the agreements. There is injury concrete and sufficiently particularized arising from Plaintiffs self-funded resistance to the organizing campaign. See Docket No. 133, Exhibit A, Deposition of Wanda Patterson, at 60-68. What Plaintiffs argue for is the right not to be represented in a collective bargaining arrangement that violates 29 U.S.C. Section 186.

Defendants argue that the union engaged in lawful conduct, despite Plaintiffs' claims, and that the Court ought not reward Plaintiffs with the ability to maintain an action to prevent the associational rights of those who would wish to join a union. But in this case, it is not organizing in general that is challenged, but organizing pursuant to the agreements alleged to be in violation of 29 U.S.C. Section 186 that forms the gravamen of the complaint.

Defendants also argue that the first campaign is over and for that reason, so is the risk of

10

(5:03CV1596)

harm. However, the lawsuit commenced during the first organizing campaign, while Plaintiffs were resisting the union's efforts to represent them pursuant to means that Plaintiffs allege are contrary to law. Further, pursuant to the agreements, there may be a second or third campaign in which Plaintiffs allege they will be forced to again resist being represented by a union that, under their allegations, gained its position pursuant to an illegal process. Accordingly, the Court finds on this narrow ground, i.e. alleged violations of 29 U.S.C. 186(a) and (b),  Plaintiffs have Article III  standing to maintain the action.

        A. Standing: Prudential Standing

        Defendants Heartland/C&A also claim that Plaintiffs lack prudential standing, citing Toyota Landscaping v. Southern Cal. Dist. Council, 11 F.3d 114 (9th Cir. 1993). In Toyota Landscaping,  the plaintiff contractor attacked a provision of a collective bargaining agreement, to which it was not a party, as violating 29 U.S.C. 186 because the agreement required damages to be paid to the defendant union if a contractor paid laborers less than the negotiated rate of the agreement. The Ninth Circuit concluded that plaintiff lacked standing to attack the agreement because as a contractor it was not within  the "zone of interests" intended by the statute for enforcement. 11 F.3d at 117.

        According to the Toyota Landscaping case, the test for prudential standing focuses on the following factors:

        "(1) whether implying a remedy for Toyota Landscaping is consistent with the underlying purpose of the statutory scheme; (2) whether the Congress intended to create or deny a remedy; and (3) whether Toyota Landscaping is a  member of the class for whose benefit the statute was enacted."

Toyota Landscaping, 11 F.3d at 117.

(5:03CV1596)

However, courts have repeatedly found that employees are within this zone of interests to maintain a private right of action to enforce the provisions of 29 U.S.C. Section 186. See, e.g., Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 205 (1962);  Holmes v. Donovan, 984 F.2d 732 (6th Cir. 1993). Cf. Hotel Employees Local 57 v. Sage Hospitality, 390 F.3d 206, 219 (employees have standing, not contractors,  under Section 29 U.S.C. 186). [4]  Accordingly, the Court concludes that Plaintiffs have prudential standing to maintain this action.

B. Private Right of Action

The Court further holds that Plaintiffs may maintain a private right of action pursuant to 29 U.S.C. Section 186.  As discussed previously, in the instant case Defendants sought a writ of mandamus, alleging that Defendants should not be required to engage in discovery because there was no basis for jurisdiction. The Sixth Circuit responded to that argument in part as follows:

> The petitioner asserts that it should not be required to produce any discovery until there has been a determinative ruling on whether the plaintiffs can pursue their action for an injunction under Section 302(e). However, the federal courts have entertained private rights of action for injunctive relief under Section 302(e). *See, e.g., Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 587-88 (1993) ("By its unmistakable language, Section 302(e) provides district courts with jurisdiction 'to restrain violations of this section.' A 'violation' of Section 302 occurs when the substantive restrictions in Sections 302(a) and (b) are disobeyed. . . ."); *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 205 (1962) (noting that Section 302(e) permit[s] private litigants to obtain injunctions in order to protect the integrity of employees' collective bargaining representatives in carrying out their responsibilities."), *overruled on other grounds, Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235 (1970); *Holmes v.*

---

[4]     In many respects, prudential standing and the determination of an implied private right of action use tests similar in nature, as both trace their lineage to Cort v. Ash, 422 U.S. 66 (1975). Cf. Toyota Landscaping, 11 F.3d at 17 with Alexander v. Sandoval, 532 U.S. 275, 287 (2001). The Court addresses the issue of a private right of action in the next section.

12

(5:03CV1596)

> *Donovan,* 984 F.2d 732 (6th Cir. 1993) (affirming the dismissal of such an action as barred by the six month statute of limitations); *Sellers v. O'Connell,* 701 F.2d 575 (6th Cir. 1983); *Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp.,* 634 F.2d 258 (6th Cir. 1981).

 Order, Case No. 04-3290, at 2-3 (6th Cir. April 28, 2004). See Docket No. 57.

Plaintiffs argue that the Sixth Circuit has already ruled on the issue of whether a private right of action exists by virtue of the Order above. In Plaintiffs' view, by listing the cases that recognize a private right of action, the Sixth Circuit was telling the Court how to rule on the issue. Further, according to Plaintiffs, the Order has become the law of the case and thus the Court must find there was a private right of action.

The language of the Order would seem to support that view, except for the fact that there are no case citations from the period after the decision in Alexander v. Sandoval, 532 U.S. 275 (2001), which Defendants claim caused a reexamination of the implied private right of action as asserted by employees under 29 U.S.C. Section 186. Defendants are asking for that analysis.

The Supreme Court has outlined four factors to consider when determining the existence of an implied right of action from a statute:

> First, is the plaintiff one of a class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication in the legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Cort v. Ash, 422 U.S. 66, 78 (1975).

With regard to 29 U.S.C. Section 186, the answer to all of the questions above has

13

(5:03CV1596)

traditionally been "yes" with regard to an implied right of actions by employees found to have standing to allege such claims. Defendants do not cite any cases before or after the Supreme Court decision in <u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001) to question that view but instead argue that the using the reasoning in that case would lead the Court to conclude there is no private right of action.

The <u>Sandoval</u> decision did cause a reexamination of the implied private right of action. In that case, a private right of action was created in regulations promulgated under a federal statute. The Supreme Court concluded that the statute itself did not grant such power to create an implied cause of action. <u>Sandoval</u>, 532 U.S. at 291. The Supreme Court also focused on the fact that no enforcement mechanism was contained in the statute before it; accordingly, no private right of action was intended. In the instant matter, Congress specifically granted to the courts the power to enforce by injunction the provisions of 29 U.S.C. Section 186. As the Sixth Circuit noted in denying the mandamus petition, <u>Sinclair Refining Co. v. Atkinson</u>, 370 U.S. 195, 205 (1962) stands for the proposition that "Section 302(e) permit[s] private litigants to obtain injunctions in order to protect the integrity of employees' collective bargaining representatives in carrying out their responsibilities."), <u>overruled on other grounds, Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235 (1970).

Defendants also point to other considerations discussed in <u>Sandoval</u> including whether the statute contains rights creating language, determined by whether the statute is phrased in terms of the individuals protected or the person regulated. The statute at issue herein is mindful of the rights of employees by regulating those who harm employees by self-dealing and other

14

(5:03CV1596)

wrongful conduct. Finally, the fact that other provisions within the same statutory scheme, i.e. 29 U.S.C. Section 187, have more explicit causes of actions described  within those statutes is only one of several considerations to be used when examining whether or not to imply a private right of action.

Accordingly, for the reasons stated, the Court concludes that Plaintiffs may maintain a private right of action pursuant to 29 U.S.C. Section 186.

C. Alleged Violations of 29 U.S.C. 186

Although the Court finds there is standing and the ability to maintain a private right of action, the Court concludes that Plaintiffs have not demonstrated facts to support a violation of 29 U.S.C. Section 186 by virtue of the agreements entered into by Defendants.

The Court first notes that it seems a misnomer to call these "neutrality" agreements. In this case, by design, one union is selected and given preference over all other unions. There is undisputed evidence that under similar circumstances as the Holmesville organizing drive, the defendant employer actively opposed the efforts of another union. See Doc. No. 128, Exhibit 50 which states that while C&A had a neutrality agreement with USW and would not oppose its organizing efforts at its Columbia, Missouri plant,  C&A told its employees in a public announcement that it was opposed to a rival union, the United Automobile Workers ("UAW").

**QUESTION: What is C&A's position on the UAW?**
ANSWER: I am opposed to the UAW coming into this facility. We do not feel the UAW has anything constructive to offer you, your family or this facility. I feel this way because I know that the UAW can cause disruptions and discord within a plant. We simply do not want the potential disruptions and problems the UAW could bring into our facility. We will do everything we can that is legal and proper to keep the UAW out of the Columbia plant.

15

(5:03CV1596)

Exhibit 50, at 2. See also Doc. No. 129, Plaintiffs' Motion for Summary Judgment, at 11-12.

In order to gain that preferred status, Defendant USW  gave something to Heartland/C&A: the promise of settled terms for their representation. According to Stockman, stability and predictability are high values for the venture and  the company was willing to provide cooperation for the USW's organizing drive even if it meant that its employees might ultimately become a union shop.  It is undisputed that this was an intensely negotiated agreement, which by necessity means there was give and take in the process. This means that the employer Heartland/C&A also gave, and the union received, certain benefits from the agreements related to access for the organizing drive and future benefits related to a collective bargaining agreement if the union was chosen through the card check procedure.

Further, the statute upon which the claims are based clearly prevents an employer from seeking to influence the conduct of a union or union official by <u>giving</u> money or other thing of value. 29 U.S.C. Section 186(a). The statute also prevents a union official from <u>receiving</u> or accepting "any money or other thing of value" from an employer. 29 U.S.C. Section 186(b). The five counts of the Second Amended Complaint (Doc. No. 55)  allege variations of the same claim based on different parties identified in the statute, whether the alleged payments are made to or received by  an actual union or simply one who represents employees engaged in commerce.

There is no allegation made that money changed hands. But do neutrality or cooperative agreements given between the parties constitute the kind of "other thing of value"  that the statute prohibits? The Third Circuit recently upheld the validity of a so-called neutrality agreement in <u>Hotel Employees Local 57 v. Sage Hospitality</u>, 390 F.3d 206 (3rd Cir. 2004). In that

16

(5:03CV1596)

case, Defendant Sage Hospitality sought to have declared void a neutrality agreement it entered

into with the plaintiff union citing 28 U.S.C. Section 186, the same statute at issue in this case..

Quoting from the United States Supreme Court decision in <u>Arroyo v. United States</u>, 359 U.S.

419, the Third Circuit stated:

> "When Congress enacted section 302, it was 'concerned with corruption of
> collective bargaining through bribery of employee representatives by employers,
> with extortion by employee representatives, and with the possible abuse by union
> officers of the power which they might achieve if welfare funds were left to their
> sole control.'"

<u>Sage Hospitiality</u>, 390 F.3d at 218, *quoting* <u>Arroyo v. United States</u>, 359 U.S. at 425-426.

Plaintiffs argue that the Third Circuit opinion is not binding on this Court because (a) it

comes from the Third Circuit and (b) the 29 U.S.C. Section 186 claim was a backup claim for the

defendant in that case and that it therefore did not receive due consideration.

The Court, however, agrees with the Third Circuit's holding and reasoning, especially as

it relates addresses the claim that neutrality agreements constitute a "thing of value" under the

statute:

> There are many reasons why this argument makes no sense, including the
> language of Section 302 itself, which proscribes agreements to "pay, lend, or
> deliver. . . any money or other thing of value." The agreement here involves no
> payment, loan, or delivery of anything. The fact that a Neutrality Agreement–like
> any other labor arbitration agreement– benefits both parties with efficiency and
> cost saving does not transform it into a payment or delivery of some benefit.
> Furthermore, any benefit to the union inherent in a more efficient resolution of
> recognition disputes does not constitute a thing of value within the meaning of the
> statute." (citation omitted).

<u>Sage Hospitality</u>, 390 F.3d at 219.

The Sixth Circuit recently decided a case where the issue of what is a "thing of value"

17

(5:03CV1596)

pursuant to 29 U.S.C. Section 186 was ultimately not relevant to the final decision. In U.S. v. Douglas, 398 F.3d 407 (6th Cir. 2005), Defendants were charged with a violation of 18 U.S.C. 371, which criminalizes an intent to defraud the United State through a conspiracy to violate the LMRA. One of the claims made was that Defendants violated 29 U.S.C. 186 by demanding a "thing of value" to settle a labor dispute in the form of a job appointment and the authority to amend agreements necessary to secure the appointment. The district court dismissed the indictment, finding that those items were not "things of value."  The government did not appeal that determination. The Sixth Circuit ultimately determined that the government was not required to allege a separate violation of the LMRA in order to sustain a claim under 18 U.S.C. 371. Id. at 413.

Because there is no apparent Sixth Circuit decision on point, and for the preceding reasons, the Court concludes that the Neutrality Agreements in this case do not violate 29 U.S.C. 186 as a matter of law.  Accordingly, Defendants' motions for summary judgment are well-taken.

**CONCLUSION**

In summary, the Court finds that Plaintiffs have standing and the ability to maintain a private right of action pursuant to 29 U.S.C. 186.  The Court further finds, there being no material facts in dispute, that the neutrality agreements entered into by Defendants did not constitute "things of value"  that the  employers gave or the  union received in violation of 29 U.S.C. 186.

18

(5:03CV1596)


Accordingly,  Defendants' USW and Heartland/C&A's  Motions for Summary Judgment (Doc. Nos. 131 and 138) are GRANTED. Plaintiffs' Motion for Summary Judgment (Doc. No. 128) is DENIED.


IT IS SO ORDERED.


  April 20, 2006                                                     */s/ David D. Dowd, Jr.*
Date                                               David D. Dowd, Jr.
                                                 U.S. District Judge

19